# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,
        Plaintiff,

v.                                                Case No. 05-C-872

MATTHEW J. FRANK,
DR. RONNY WRIGHT,
DR. MARGARET ALEXANDER,
CHRIS KRUEGER,
JUDY SMITH,
LEONARD WELLS, and
KATHLEEN NAGLE,
        Defendants.

## DECISION AND ORDER

Plaintiff Terrance J. Shaw, a Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of various constitutional rights. On August 15, 2005, plaintiff paid the full filing fee of $250.

### I.  SCREENING

Regardless of the fee status, I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). Therefore, I may dismiss a claim as frivolous where it is based on an indisputably

meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, I must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon him by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980).

## II. FACTS AND BACKGROUND

Plaintiff is incarcerated at Oshkosh Correctional Institution (OCI). The defendants are all Wisconsin Department of Corrections (DOC) employees. Defendant Wells is the commissioner of the Wisconsin Parole Board; defendant Frank is the DOC secretary; defendant Nagle is the DOC Director of Assessment and Evaluation; defendant Smith is the OCI warden; defendant Alexander is the Director and Chief Therapist of the OCI Sex Offender Treatment Program (SOTP); defendant Wright is a therapist at OCI; and defendant Krueger is a unit director at OCI.

According to the complaint, plaintiff convicted of first degree intentional homicide

and first degree sexual assault, and sentenced to life imprisonment, plus twenty years running consecutively.

On January 6, 1983, plaintiff was evaluated and given a custody rating of two, which he asserts is the lowest possible custody rating. In addition, he was ordered to participate in Sex Offender Treatment (SOT). Then, on February 26, 1992, it was recommended that plaintiff be transferred to OCI, where he would begin SOT.

On April 28, 1994, ex-governor Tommy Thompson issued a statement directing the DOC to pursue "any and all available legal avenues to block the release of violent offenders who have reached their mandatory release date." (Compl. ¶6.) On September 10, 1997, the OCI Program Review Committee recommended that plaintiff be placed in the Sexual Offender Treatment Program (SOTP) to satisfy his SOT program needs. However, when plaintiff was first sentenced and placed in custody, SOTP did not exist. Plaintiff contends that the programs are different, because SOT may be completed in a shorter period of time.

On December 16, 1997, plaintiff entered SOTP, where defendant Alexander was the Director and Chief Therapist. As part of his treatment, Alexander and her staff instructed plaintiff to "list all his deviant crazy sexual thoughts and fantasies." (Compl. ¶ 12.) At that time, plaintiff informed Alexander that although he was "100% committed to successfully completing the treatment program," he very rarely had "any violent sexual fantasies, and that even to create any would violate his sincere religious belief." (Compl. ¶ 13.) However, in July 1999, after being subjected to continued threats of termination from SOTP, plaintiff was coerced into making up "some bizarre deviant sexual thoughts and fantasies," which he handed in as part of a writing assignment. (Compl. ¶ 14.) Staff informed plaintiff that

3

his assignment "wasn't violent enough," and advised him to incorporate feedback from other SOTP inmates into a second draft. (Id.) Then, on August 17, 1999, plaintiff was terminated from SOTP "on grounds that [he] was not complying with S.O.T.P. program rules." (Compl. ¶ 15.) Plaintiff contends that he was terminated from the program because of the exercise of his religious beliefs, and that he was "constantly belittled, demeaned and brow beaten" because of his religious beliefs. (Compl. ¶ 17.) Specifically, he avers that Alexander referred to him as a "halo head" and "dork" in front of other inmates. (Id.)

On February 14, 2000, plaintiff was found guilty of soliciting staff and violating institution policies and procedures. He was sentenced to eight days adjustment segregation and 180 days program segregation. Soon thereafter, plaintiff wrote to Alexander, requesting that he be readmitted to SOTP. On March 6, 2000, Alexander informed plaintiff that after he was "ticket free for at least 6 months," he could apply for re-entry into SOTP. (Compl. ¶ 19.)

Sometime in June 2000, plaintiff's security classification was raised from medium to maximum, and he was transferred to Waupun Correctional Institution (WCI). On April 12, 2001, plaintiff enrolled in SOT. Then, on May 22, 2001, plaintiff's February 14, 2000 conduct report was reversed and expunged by the Dane County Circuit Court. The order provided that plaintiff was to "be restored to whatever status [he] would occupy if the February 14, 2000 adult conduct report and its ensuing disciplinary measures had never been issued." (Compl. ¶ 22.)

On February 7, 2003, plaintiff met with Dr. Ankarlo, who prepared a Sex Offender Program Report for plaintiff's upcoming parole hearing. Ankarlo's report indicated that over the past two years plaintiff had benefitted from SOT and made improvements. However,

4

due to the nature of his crime, Ankarlo recommended that plaintiff be re-evaluated by an independent psychologist. Furthermore, Ankarlo suggested that the "physiological measure" of plaintiff's current sexual deviancy be tested.

Then, on June 11, 2003, defendant Alexander submitted a "self-generated, unsolicited, highly inaccurate and damning" parole report, indicating that plaintiff had high treatment needs in all areas. (Compl. ¶ 24.) In addition, the report referred to plaintiff's expunged conduct report. Plaintiff submits:

> This Report was made to appear as though it reflected an up to date current assessment of the Plaintiff's treatment progress, when in fact, Plaintiff had no contact or participation in any treatment programs with Dr. Alexander since she terminated him against his will from the OSCI SOTP in 1999, over four years ago in the past.
>
> Upon information and belief, Dr. Alexander maliciously and intentionally submitted her unsolicited, inaccurate, misleading and seditious report in order to "trump" WCI's Dr. Ankarlo's highly favorable report, and cause Plaintiff prejudice when he appeared before the Parole Board for consideration of release, or other favorable consideration.

(Compl. ¶¶ 24-25.)

Thereafter, plaintiff wrote to warden Smith, alerting her to Alexander's misconduct. In addition, on August 10, 2003, he filed a motion for contempt against Alexander, to which the Attorney General's Office responded:

> that Plaintiff was correct, and that the matter of the conduct report would be corrected, and that the negative report was intended to be written at an earlier time when the Plaintiff was kicked out of the OSCI SOTP in August 1999 against his will, before the conduct report was issued, tried, reversed, and ORDERED expunged.

(Compl. ¶27.) Also, on September 10, 2003, plaintiff lodged a complaint against Alexander with the Wisconsin Department of Regulation and Licensing.

On November 19, 2003, the parole board found that plaintiff was still an

5

unreasonable risk to the community because he had an unmet program requirement. The parole board granted him an eighteen-month deferral and recommended that he be re-evaluated for placement in SOT. On August 17, 2004, plaintiff was re-evaluated by Dr. Lori Adams, who concluded that he needed additional SOTP treatment because two modules were not addressed during his participation in SOT.

> On August 25, 2004, plaintiff wrote to defendant Krueger, asking
>
> that [he] be allowed to be tested for [his] current sexual deviancy by being hooked up to their plythismalgraph machine (a penis lie detector) to comply with the recommendation of [his] former therapist, WCI's SOT Chief Psychologist, Dr. Gary Ankarlo, and have [his] last essential program need completed.

(Compl. ¶31.) On September 15, 2004, Krueger denied plaintiff's requests for a plythismalgraph test and refused to allow him to re-enter SOTP.

Next, on September 20, 2004, plaintiff filed Inmate Complaint OCI-2004-30382, "alleging he was being arbitrarily denied the opportunity to complete the last phase of the SOTP (that was recommended by both WCI's Ankarlo and OSCI's Dr. Adams)." (Compl. ¶34.) Also on September 20, 2004, he filed Inmate Complaint OCI-2004-30837, asking for a transfer from OCI to a different SOTP program because doctors in the OCI program were biased against him. Plaintiff maintains that the SOPT Program Need is being applied to him solely to increase the length of his conviction.

Since his initial incarceration in 1982, plaintiff has received a Master's Degree in Religious Studies, a Doctorate in Bible Studies, a PhD in the Philosophy of Religion, and an Honorary Doctor of Divinity from the Universal Life Church in Modesto, California. He contends that upon completion of his correspondence courses, it is customary to take on a new outward identity to reflect the "inward belief that [he has] had a genuine Spiritual-

6

Case 2:05-cv-00872-JPS   Filed 02/15/06   Page 6 of 13   Document 3

Awakening and been Born-Again." (Compl. ¶45.) As a result, plaintiff chose to adopt the new name of Reverend Terrance J. Shaw, PhD, D.B.S., D.D. On May 16, 2003, the plaintiff filed a petition for name change in Dodge County Circuit Court, Case No. 03-CV-0298. However, the DOC objected, and on September 5, 2003, his request was denied.

Subsequently, on November 26, 2003, plaintiff's motion for reconsideration of the September 5, 2003 order denying his name change petition was denied. On October 21, 2004, the Wisconsin Court of Appeals affirmed the decision of the circuit court, and the Wisconsin Supreme Court denied plaintiff's petition for review.

Plaintiff asserts that he asked the DOC to allow him to use his "old name" and his "new Religious Name" but was refused. (Compl. ¶56.) He filed an inmate complaint but it was dismissed.

Plaintiff requests a declaratory judgment, injunctive relief, and compensatory and punitive damages. He also seeks a jury trial.

### III. PLAINTIFF'S CLAIMS

**A.     Count I - Equal Protection**

Plaintiff asserts that the defendants violated his equal protection rights when they denied his request to re-enter SOTP. To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

Prisoners do not constitute a suspect class entitled to strict scrutiny of regulations or programs affecting them. Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990). "In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates

7

to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000).

Here, plaintiff asserts that he was wrongfully terminated from the SOTP program. Further, because he was previously terminated from the program, prison administrators denied his reentry into the program, instead giving priority to individuals who had not participated previously in the program. The inability to participate in the program caused him to remain ineligible for parole consideration. Giving the plaintiff's claims liberal construction, as I must, I conclude that has alleged that he was terminated arbitrarily and without a legitimate basis and thus has alleged an arguably cognizable constitutional claim.

**B.    Counts II and III - Violations of the Ex Post Facto Clause**

Plaintiff asserts in count II that ex-governor Thompson's directive and in count III that defendants use of new parole criteria violate his rights under the Ex Post Facto Clause. The United States Constitution prohibits Congress and the states to enact any ex post facto law. U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. An ex post facto law is one "which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981). For a law to be ex post facto, it must be retrospective and it must disadvantage the offender affected by it. Id. at 29.

Plaintiff's claim based on the Thompson directive must be dismissed. Plaintiff alleges that the directive applies only "to violent offenders who have reached their mandatory release date." (Compl. ¶6.) Under Wisconsin law, "an inmate serving a life term is not entitled to mandatory release." Wis. Stat. § 302.11(1m). In light of the foregoing, plaintiff fails to state an ex post facto claim in count II of his complaint.

8

Generally, "the prohibition against ex post facto laws is not violated by applying more severe parole guidelines than those in force when the crime was committed." Prater v. U.S. Parole Comm., 802 F.2d 948. 951 (7th Cir. 1986) (en banc).  However, the Supreme has recognized that some changes may violate an inmate's rights under the Clause.  To succeed on an ex post facto challenge to a retroactive application of parole review considerations, the controlling inquiry is whether such application creates a sufficient risk of increasing the measure of punishment attached to the covered crimes.  Garner v. Jones, 529 U.S. 244, 250 (2000).   Here, petitioner alleges that the retroactive application of the SOTP program to him has increased his term of confinement.  While he has a heavy burden in establishing that such increase, in fact, exists, he has stated a cognizable constitutional claim.  Accordingly, I will permit plaintiff to proceed with the ex post facto claim in count III of his complaint.

**C.    Count IV - Retaliation**

Plaintiff contends that the defendants retaliated against him for filing complaints. Prisoners have a Fourteenth Amendment due process right to adequate, effective, and meaningful access to the court to challenge violations of their constitutional rights.  Bounds v. Smith, 430 U.S. 817, 821-22 (1977).  Prison officials cannot hinder prisoners from this access or retaliate against prisoners who attempt to exercise their constitutional rights. Williams v. Lane, 851 F.2d 867, 878 (7th Cir. 1988).  Retaliation against a prisoner for his use of the courts or of the administrative complaint system may give rise to a valid cause of action under § 1983.  See Black v. Lane, 22 F.3d 1395, 1400 (7th Cir. 1994).

A plaintiff must plead three elements in order to state a claim for retaliation: he must

9

"specif[y] a retaliatory action;" he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." Hoskins v. Lenear, 395 F.3d 372, 275 (7th Cir. 2005). Plaintiff met this standard. Accordingly, he states a retaliation claim.

### D. Counts V and VII - RLUIPA and Free Exercise Claims

Plaintiff avers that defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and Free Exercise Clause of the First Amendment. "RLUIPA forbids (so far as bears on this case) prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." Lindell v. McCallum, 352 F.3d 1107, 1110 (7th Cir. 2003). By alleging that defendants terminated him from participation in sex offender treatment, and belittled and forced him to engage in exercises contrary to his religious beliefs during such treatment (count V), and by refusing to allow him to use his religious name (count VII), plaintiff arguably states claims under RLUIPA.

Plaintiff also submits that defendants violated his free exercise rights. A prisoner is entitled to practice his religion as long as doing so does not unduly burden the institution. Richards v. White, 957 F.2d 471, 474 (7th Cir. 1992). A prison regulation that infringes upon an inmate's First Amendment rights is valid only "'if it is reasonably related to legitimate penological interests.'" Alston v. DeBruyn, 13 F.3d 1036, 1039 (7th Cir. 1994) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). For similar reasons, plaintiff arguably states claims under the First Amendment.

**E.     Count VI - Conspiracy to Violate Constitutional Rights**

Finally, plaintiff maintains that, by submitting an unsolicited and inaccurate SOTP report for consideration at his parole hearing, defendants Dr. Alexander and Dr. Wright conspired to violate his constitutional right to a fair parole hearing pursuant to 42 U.S.C. § 1985(3).  To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." Green v. Benden, 281 F.3d 661, 665 (7th Cir. 2002) (citing Hernandez v. Joliet Police Dep't, 197 F.3d 256, 263 (7th Cir.1999)).  Underlying a civil conspiracy claim under §1985 is a violation of a constitutional right.  Here, petitioner seems to assert that defendants conspired to deny him due process in his parole hearing.

To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself.  See Sandin v. Connor, 515 U.S. 472, 483-84 (1995). It is well established that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Heidelberg v. Illinois Prisoner Review Bd., 163 F.3d 1025 (7th Cir. 1998) (citations omitted). In this state, an inmate has a protected liberty interest in parole only after he reaches his mandatory release date. See Felce v. Fiedler, 974 F.2d 1484, 1491-92 (7th Cir. 1992).  Under Wisconsin law, "an inmate serving a life term is not entitled to mandatory release."  Wis. Stat. § 302.11(1m).  In this case, plaintiff was sentenced to life imprisonment plus twenty years.  Therefore, he has no protected liberty interest in his parole.

11

If a person does not have a protected liberty interest in a proceeding, "the state is free to use any procedures it chooses, or no procedures at all." Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001). Thus, to the extent that plaintiff bases his conspiracy claim on an allege denial of due process in the parole proceeding, he has failed to allege defendants conspired for an unlawful purpose. Accordingly, plaintiff's conspiracy claim will be dismissed to the extent it is based on a deprivation of due process. If plaintiff can establish the denial of some other right, he may proceed on this claim.

## IV. CONCLUSION

In conclusion, plaintiff will be permitted to proceed on his equal protection claim, count III ex post facto claim, retaliation claim, as well as his free exercise and RLUIPA claims against all defendants. Plaintiff's count II ex post facto claim is dismissed, as his conspiracy claim to the extent it is based on denial of his due process rights.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendants pursuant to Federal Rule of Civil Procedure 4.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or

document filed with the court to the opposing parties or their attorney(s).  Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document.  If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents.  The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 15 day of February, 2006.

/s_____
LYNN ADELMAN
District Judge