# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

        Plaintiff,

      v.                                  Case No. 05-C-0872

MATTHEW J. FRANK, DR. RONNY WRIGHT,
DR. MARGARET ALEXANDER, CHRIS KRUEGER,
JUDY SMITH, LEONARD WELLS,
and KATHLEEN NAGLE,

        Defendants.

---

# DECISION AND ORDER

Plaintiff, Terrance J. Shaw, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in forma pauperis*. This matter comes before the court on the plaintiff's motion for reconsideration, the plaintiff's request for a ruling on his motion to stay and the defendants' motion for summary judgment. All applications will be addressed herein.

## I. PLAINTIFF'S MOTION FOR RECONSIDERATION

The plaintiff has moved for reconsideration of this court's October 17, 2007, decision and order denying his motion for appointment of counsel. A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). And, while it is true that any nonfinal

decision or order is subject to revision at any time before the entry of judgment, Fed. R. Civ. P. 54(b), such revisions are discouraged. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996).

In the present case, the plaintiff does not assert that this court's order of October 17, 2007, contains a manifest error of law and he has not presented newly discovered evidence. *See Rothwell*, 827 F.3d at 251. Rather, the plaintiff contends that it was error to deny his motion to appoint counsel because: (1) he was unable to adequately respond to the defendants' motion for summary judgment; (2) he relies on another inmate for assistance in preparing his legal papers; and (3) he has been unable to obtain discovery. With respect to his first argument, the court notes that the plaintiff has submitted several lengthy responses to the defendants' motion. In particular, the plaintiff responded to the defendants' motion with an 11-page affidavit, a 31-page response brief and a 17-page sur-reply brief. Thus, the court is not persuaded that the plaintiff's *pro se* status has prevented him from responding to the defendants' motion.

Next, the plaintiff asserts that he relies on another inmate for legal assistance and this inmate is not able to gather evidence and prepare arguments regarding the plaintiff's ex post facto claim. The court notes that the plaintiff filed a motion to compel the defendants to provide him with discovery related to his ex post facto

Case 2:05-cv-00872-JPS   Filed 01/31/08   Page 2 of 29   Document 114

claim. However, he has yet to show that the defendants' responses to his discovery requests were unreasonable. Moreover, as previously noted, the inmate assisting the plaintiff has helped prepare several detailed responses to the defendants' motion. For the foregoing reasons, the court is not persuaded that reconsideration of the October 17, 2007, order is warranted. Thus, the plaintiff's motion for reconsideration will be denied.

## II.  PLAINTIFF'S REQUEST FOR A RULING ON HIS MOTION TO STAY

The plaintiff asserts that the court neglected to rule on his motion to stay the summary judgment proceedings pending resolution of his motion to appoint counsel. As a preliminary matter, review of the docket reveals that the plaintiff never filed a motion to stay that complies with Civil Local Rule 7.1 (E.D. Wis.) ("every motion must set forth the rule pursuant to which it is made and must be accompanied by a supporting brief and, when necessary, affidavits or other documents, or a certificate of counsel stating that no brief or other supporting documents will be filed."). Regardless, the plaintiff's motion to appoint counsel and motion for reconsideration have been denied. Therefore, the plaintiff's request to stay the proceedings will be denied as moot.

## III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On May 25, 2007, the defendants filed a motion for summary judgment on all of the plaintiff's claims. The plaintiff responded on July 23 and September 17, 2007, and on August 21, 2007, the defendants filed their reply. Hence, the defendants' motion is fully briefed and ready for resolution.

## A.    Background

On August 15, 2005, the plaintiff filed a civil rights action against defendants Matthew J. Frank, Dr. Ronny Wright, Dr. Margaret Alexander, Chris Krueger, Judy Smith, Leonard Wells, and Kathleen Nagle.  By order dated February 15, 2006, the complaint was screened and the plaintiff was permitted to proceed on the following claims: (1) an equal protection claim based on his allegation that he was wrongly terminated from and denied reentry to the Sexual Offender Treatment Program (SOTP); (2) a claim that requiring him to participate in SOTP violates the ex post facto clause; (3) a claim that the defendants retaliated against him for filing inmate complaints; (4) a claim that the defendants violated his rights under the free exercise clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA) when they refused to allow him to use his religious name; and (5) a claim that his rights under the free exercise clause and RLUIPA were violated when the defendants forced him to engage in SOTP exercises that were contrary to his religious beliefs.

## B.    Standard of Review

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could

return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to

draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## C. Relevant Undisputed Facts[1]

The plaintiff is currently incarcerated at Oshkosh Correctional Institution (OSCI). All defendants are employed by the Wisconsin Department of Corrections (DOC). Defendant Matthew Frank is the Secretary of the DOC. (Affidavit of Matthew J. Frank [Frank Aff.] ¶ 1). At all times relevant, defendant Judy Smith was the warden of OSCI. (Affidavit of Judy Smith [Smith Aff.] ¶ 2). Defendant Leonard Wells was the chairperson of the Wisconsin Parole Commission. (Affidavit of Leonard Wells [Wells Aff.] ¶ 3). Defendant Ronny Wright was employed by the DOC as a psychologist. (Affidavit of Ronny Wright [Wright Aff.] ¶ 2). Defendant Dr. Margaret Alexander was a psychologist supervisor. (Affidavit of Margaret A. Alexander [Alexander Aff.] ¶ 19). Defendant Chris Krueger was employed as a corrections unit supervisor in the sex offender unit. (Affidavit of Chris A. Krueger [Krueger Aff.] ¶ 1). Defendant Kathleen Nagle was employed by the DOC as a classification section chief and director of assessment and evaluation. (Affidavit of Kathleen A. Nagle [Nagle Aff.] ¶ 2).

### 1. Plaintiff's Name Change Request

Pursuant to Wisconsin Administrative Code § DOC 303.31, inmates are prohibited from using titles other than Mr., Ms., Miss or Mrs. (Affidavit of Mark L.

---

[1]The facts in this section are derived from the plaintiff's affidavits, to the extent they are undisputed, and the defendants' affidavits and proposed findings of fact to the extent they are undisputed. *See* Civil L.R. 56.2(b) (E.D. Wis.). Additionally, the facts pertaining to the plaintiff's First Amendment and RLUIPA claims are taken from this court's January 8, 2007, order denying the plaintiff's motion for partial summary judgment.

Weisgerber [Weisgerber Aff.] ¶ 4).  Section 303.31 also prohibits inmates from using a name other than that under which the inmate was committed to the DOC, unless the name has been legally changed.  (Weisgerber Aff. ¶ 5).

The purpose of prohibiting an inmate from using a title other than Mr., Ms., Miss or Mrs., or any name other than that under which the inmate was incarcerated, is to protect members of the public from being misled by an inmate and to avoid confusion of staff members concerning the identity of inmates. (Weisgerber Aff. ¶ 6). Moreover, § 303.31 aims to prevent inmates who pose a particular threat to institution and community safety to slip unnoticed through the correctional system. (Weisgerber Aff. ¶ 12).

On May 16, 2003, the plaintiff filed a change of name petition in Dodge County Circuit Court, requesting that his name be legally changed from "Terrance James Shaw" to "Reverend Terrance James Shaw, D.B.S., Ph.D., D.D."  (Affidavit of Christine Freeland [Freeland Aff.] Ex. 1003).  For security and administrative reasons, the DOC sought to intervene in the action and prevent the plaintiff from changing his name.  (Freeland Aff. Ex. 1003 at 2-9).

On September 5, 2003, the DOC was permitted to intervene and the plaintiff's petition for change of name was denied.  (Freeland Aff. Ex. 1003 at 10).  And, on November 26, 2003, the plaintiff's motion for reconsideration was denied.  (Freeland Aff. Ex. 1003 at 11).  Subsequently, the plaintiff appealed to the Wisconsin Court of Appeals.  (Freeland Aff. Ex. 1004 at 1).  On October 21, 2004, the denial of the plaintiff's name change petition was affirmed because he failed to show that being

denied use of his religious name posed a substantial burden on his exercise of religion. (Freeland Aff. Ex. 1004 at 4-6).

## 2. Denial of Parole

The plaintiff is incarcerated as a result of a violent homicide involving sexual assault. (Alexander Aff. ¶ 2). The DOC offers several treatment programs to sex offenders, including Sex Offender Treatment Program (SOTP) and Sex Offender Treatment (SOT). (Alexander Aff. ¶ 5). SOTP is an intensive, long-term treatment program for sex offenders. (Alexander Aff. ¶ 7). Referral to SOTP depends on a number of facts, including the severity of the crime, risk factors for future sexual offenses and space availability. *Id.* SOT, on the other hand, is less rigorous than SOTP, shorter in length and involves a lesser time commitment on the part of the inmate. (Alexander Aff. ¶ 8). SOT is appropriate for offenders with a more limited sex offense history. *Id.*

If an inmate elects to enter a sex offender program, DOC clinical services determines which program he or she will be referred to. (Alexander Aff. ¶ 6; Nagle Aff. ¶ 6). On or about December 15, 1997, the plaintiff entered SOTP. (Alexander Aff. ¶ 5). However, for reasons that are in dispute, the plaintiff was terminated from SOTP in 1999. (Affidavit of Terrance J. Shaw [Shaw Aff.] ¶¶ 21-22). The plaintiff frequently corresponded with SOTP staff after his termination from the program. (Krueger Aff. Ex. 1000). In a September 15, 2004, response to one of the plaintiff's missives, defendant Krueger advised him that he was not eligible for reentry into SOTP due to his previous termination from the program. *Id.*

Case 2:05-cv-00872-JPS   Filed 01/31/08   Page 8 of 29   Document 114

The procedures for releasing offenders on parole are set forth in Wisconsin Statutes Chapter 304 and Chapter PAC 1 of the Wisconsin Administrative Code. (Wells Aff. ¶ 5). One criteria considered by the Wisconsin Parole Commission (WPC) is whether the inmate served sufficient time so that release would not depreciate the seriousness of the offense. (Wells Aff. ¶ 7). During defendant Wells' tenure as chair of the WPC, the WPC did not have the authority to order specific programming needs related to sex offender treatment. (Wells Aff. ¶ 8). However, once an inmate was referred for specific programming, it was the responsibility of the WPC to determine whether the inmate had demonstrated satisfactory program participation at the institution. (Wells Aff. ¶ 10).

### 3. Inmate Complaints

As relevant to this case, the plaintiff filed three inmate complaints concerning the conditions of his confinement.

### a. Inmate Complaint 1

On September 22, 2004, the plaintiff filed Inmate Complaint OSCI-2004-30382, asserting, in part, that

> On 9-18-04 I received a response from Ms. Krueger, to my 8-25-04 letter to her requesting to have their technician hook me to their plythismalgraph, so that I may be physiologically measured for my current sexual deviancy.[2] The OSCI plythismalgraph is housed over there in K-Building. In my 8-25-04 letter to K-Building's Ms. Krueger, I specifically said I was trying to comply with WCI's 2003 Sex Offender Program Report on me by WCI's Chief Sex Offender Psychologist, Dr. Gary Ankarlo. In that report,

---

[2]It appears that the plaintiff is referring to a penile plethysmograph, a test that is available at OSCI. (Alexander Aff. ¶ 31).

> Dr. Ankarlo recommends that I should be given, "...physiological measures of current sexual deviancy..." I clearly pointed this out to Ms. Krueger in my 8-25-04 letter to her. Now I received Ms. Krueger's response, dated 9-15-04, refusing to give me the recommended physiological measure of my current sexual deviancy. It also appears that she has redefined my 8-25-04 request into a request that I be enrolled in their 3 to 4 year Sexual Offender Treatment Program, and then she refuses me entry into that program. All I (very clearly) requested in my 8-25-04 letter to K-Building Unit Director, Ms. Krueger was for them to hook me up to the plythismalgraph that they have housed over there in K-Building. By refusing to hook me up to the plythismalgraph, I am not being allowed to comply with Dr. Ankarlo's recommendation for me in his 2003 Sex Offender Program Report.

(Affidavit of Thomas J. Gozinske [Gozinske Aff.] Ex. 1012). The plaintiff further stated:

> I believe the APPLICATION of OSCI's Sex Offender Treatment Program (which wasn't invented until several years after I was convicted in 1982) is being used to IMPLEMENT former governor Thompson's Executive Directive (and to this day has never been officially rescinded) and is in violation of the Ex Post Facto Law, since the OSCI Sex Offender Treatment Program was INVENTED by the DOC several years after I was convicted, and is now being USED by the Parole Board to deny me serious consideration for release on parole.

Id. (emphasis in original).

On September 23, 2004, the Inmate Complaint Examiner (ICE) recommended that the complaint be dismissed. (Gozinske Aff. Ex. 1012 at 9). The next day, the reviewing authority accepted the ICE's recommendation and dismissed the complaint. (Gozinske Aff. Ex. 1012 at 10).

Subsequently, the plaintiff appealed to the Corrections Complaint Examiner (CCE), who recommended that the appeal be dismissed. (Gozinske Aff. Ex. 1012 at 7,12). On September 30, 2004, the Office of the Secretary (OOS) accepted the CCE's recommendation and dismissed the complaint. (Gozinske Aff. Ex. 1012 at 13).

### b. Inmate Complaint 2

On September 20, 2004, the plaintiff filed Inmate Complaint OSCI-2004-30837, alleging that the Program Review Committee (PRC) made the following false statement: "PRC NOTES THAT SINCE HIS PRIOR PARTICIPATION THE PROGRAM HAS BEEN REVAMPED AND ALMOST ALL OF THE STAFF ARE NEW." (Gozinske Aff. Ex. 1013 at 1).

The plaintiff goes on to state:

The evidence I have to prove that statement by the PRC is FALSE, is the enclosed MEMORANDUM to me from the SOTP's Center Director, Chris Krueger, dated 9-15-04. I just received Ms. Krueger's memo today on 9-18-04. In Ms. Krueger's Memo to me it states the following:

'Recently, I received correspondence from you regarding re-entry to the Sex Offender Treatment Program (SO4).'

'According to our records, you were previously involved in SOTP therapy but were either terminated by treatment providers or self terminated. Based on this information, you are not appropriate for involvement in S04 at this time, as priority is given to inmates who have not yet been afforded their first opportunity in treatment.'

The above two-paragraph quote by the OSCI SOTP Center Director proves the old (ineffective and defunct) program (and its inappropriate methods that I have a conflict of interest with) are still being used against me, as

> if PRC's talk about SOTP being revamped and new is not really true, as far as the SOTP's Center Directors' own words that proves the sentence I am complaining about in my 08/18/04 PRC Summary is a FALSEHOOD. I was in OSCI SOTP back in the 1990's, under the old program, not the new revamped program.

*Id.* (emphasis in original). On September 28, 2004, the ICE recommended that the complaint be dismissed. (Gozinske Aff. Ex. 1013 at 2). The next day, the reviewing authority accepted the decision of the ICE and dismissed the complaint. (Gozinske Aff. Ex. 1013 at 3).

Subsequently, the plaintiff appealed to the CCE, who recommended that the complaint be dismissed. (Gozinske Aff. Ex. 1013 at 5). On October 11, 2004, the OOS accepted the CCE's recommendation and dismissed the complaint. (Gozinske Aff. Ex. 1013 at 6).

### c.    Inmate Complaint 3

On January 29, 2005, the plaintiff filed Inmate Complaint OSCI-2005-3515, complaining that he was not allowed to use his religious name. (Gozinske Aff. Ex. 1014 at 1). On February 3, 2005, the ICE recommended that the complaint be dismissed. (Gozinske Aff. Ex. 1014 at 3). Then, on February 7, 2005, the reviewing authority accepted the ICE's recommendation and dismissed the complaint. (Gozinske Aff. Ex. 1014 at 4).

On February 14, 2005, the plaintiff appealed to the CCE, who recommended that the complaint be dismissed. (Gozinske Aff. Ex. 1015 at 5-8). The OOS accepted this recommendation and dismissed the complaint. (Gozinske Aff. Ex. 1015 at 9).

## IV. ANALYSIS

The defendants assert that they are entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies. Additionally, the defendants assert that there is no genuine issue of material fact as to any of the plaintiff's claims.

### A.    Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)a.

Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to Wisconsin inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies

that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006) (holding that prisoner does not satisfy exhaustion requirement by filing untimely or otherwise procedurally defective administrative grievances or appeals). In Wisconsin, an inmate must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) and 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) and 310.11(11).

The appropriate reviewing authority makes a decision within ten days following receipt of recommendation. Wis. Admin. Code § DOC 310.12(1). Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the CCE. Wis. Admin. Code § DOC 310.13(1). The CCE then reviews the appeal and makes a recommendation to the Secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's

recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

### 1. Exhaustion of Inmate Complaints

### a. Inmate Complaint 1

On September 22, 2004, the plaintiff filed Inmate Complaint OSCI-2004-30382, complaining: (1) that he was prevented from complying with Dr. Ankarlo's recommendation; and (2) that requiring him to participate in SOTP violated the ex post facto clause. The ICE recommended that the complaint be dismissed, and the reviewing authority dismissed the complaint. The plaintiff timely appealed to the CCE, who also recommended dismissal. On September 30, 2004, the OOS adopted the CCE's recommendation and dismissed the complaint. Therefore, the plaintiff exhausted his administrative remedies with respect to Inmate Complaint 1.

The defendants contend that Inmate Complaint 1 was untimely and, therefore, the plaintiff failed to properly exhaust his administrative remedies. Specifically, the defendants argue that the complaint was filed in 2004 but concerns events that occurred in 1999. The defendants are correct that an inmate must file a complaint within fourteen days after the occurrence giving rise to the complaint. *See* Wis. Admin. Code DOC § 310.09(6). However, an untimely complaint resolved on the merits is considered exhausted. *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits.").

In the present case, Inmate Complaint 1 was not rejected as untimely. Rather, prison officials addressed his concerns and dismissed the complaint. Therefore, the plaintiff exhausted Inmate Complaint 1.

### b.    Inmate Complaint 2

On September 20, 2004, the plaintiff filed Inmate Complaint OSCI-2004-30837, alleging that the PRC made a false statement about him.  The ICE recommended that the complaint be dismissed on September 28, 2004.  The next day, the reviewing authority accepted the ICE's recommendation and dismissed the complaint. The plaintiff timely appealed to the CCE, who affirmed the dismissal of the complaint on October 11, 2004.  That same day, the OOS affirmed the CCE's decision.  Thus, the plaintiff exhausted Inmate Complaint 2.

### c.    Inmate Complaint 3

On January 29, 2005, the plaintiff filed Inmate Complaint OSCI-2005-3515, complaining that he was not allowed to use his religious name. On February 3, 2005, the ICE recommended that the complaint be dismissed.  Then, on February 7, 2005, the reviewing authority accepted the ICE's recommendation and dismissed the complaint.  The plaintiff appealed and, on February 15, 2005, the CCE affirmed the dismissal of the complaint.  That same day, the OOS accepted the CCE's decision.  Therefore, the plaintiff exhausted Inmate Complaint 3.

In sum, the plaintiff exhausted Inmate Complaints 1, 2 and 3.

**2.    Exhaustion of Claims at Issue**

The defendants contend that these administrative complaints do not exhaust the five claims at issue in this case.  Specifically, the defendants argue that the plaintiff never: (1) filed an inmate complaint alleging retaliation; (2) filed an inmate complaint asserting that he was wrongfully terminated from and denied reentry to SOTP; (3) filed an inmate complaint alleging that participation in SOTP violates the ex post facto clause; and (4) never named defendant Nagle in any inmate complaint. The court will address these arguments in turn.

**a.    Claim 1 - Termination from and Denial of Reentry to SOTP**

First, the defendants assert that the plaintiff failed to exhaust Claim 1, in which he alleges that the defendants violated his rights under the equal protection clause by terminating him from and denying him reentry into SOTP.  In none of the plaintiff's three administrative complaints does he ask prison officials to address these concerns.  Nevertheless, the plaintiff claims that his allegation about SOTP was exhausted because he filed a complaint about defendants Alexander and Wright to the Department of Regulation and Licensing.  That is, the plaintiff claims that he was terminated from SOTP as a result of a Program Review Committee (PRC) decision, which he was not required to exhaust under the ICRS.  Therefore, according to the plaintiff, his only remedy was to file a complaint with the Department of Regulation and Licensing.

As a preliminary matter, the plaintiff cites no legal authority in support of his proposition that filing a complaint with the Department of Regulation and

Licensing serves to exhaust his administrative remedies. Furthermore, the evidence of file does not indicate that he was terminated from SOTP as the result of a PRC decision. However, even if the PRC has decided to terminate the plaintiff from SOTP, he would have been required to appeal any such decision under Wis. Admin. Code § 302.18 in order to properly exhaust his administrative remedies. *See* Wis. Admin. Code § 302.18 (an inmate must appeal a PRC decision to the director and cannot use the ICRS). This he failed to do.

Next, the plaintiff claims that Inmate Complaint OSCI-2004-30382 exhausted his claim about being terminated from and denied reentry to SOTP because it put the defendants on notice of the claim against him. One purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *see Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *see Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). With respect to the level of detail in an offender complaint, the DOC administrative rules require that offender complaints filed by an inmate "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e).

In the present case, Inmate Complaint OSCI-2004-30382 explicitly stated that the plaintiff was challenging defendant Krueger's refusal to administer the plythismalgraph test. And, the plaintiff stated that defendant Krueger *misconstrued* his complaint as raising a claim about SOTP. Therefore, this grievance failed to notify the defendants that the plaintiff was challenging his termination from SOTP. Accordingly, the plaintiff failed to exhaust Claim 1.

### b.    Claim 2 - Retroactive Application of SOTP

Next, the defendants argue that the plaintiff failed to exhaust Claim 2, in which he asserts that the defendants violated the ex post facto clause. In Inmate Complaint 2 the plaintiff explicitly alleges that requiring him to participate in SOTP implicates the ex post facto clause. Based on this, the court finds that the defendants were clearly put on notice of the plaintiff's ex post facto claim. *See Porter*, 534 U.S. at 524-25. Thus, the plaintiff exhausted Claim 2.

### c.    Claim 3 - Retaliation

The  defendants argue that the plaintiff failed to exhaust Claim 3, in which he alleges that the defendants retaliated against him for filing inmate complaints. Review of the plaintiff's three inmate complaints reveal that he never asserted that the defendants retaliated against him.

Nevertheless, the plaintiff asserts that he raised a retaliation claim in Inmate Complaint OSCI-2004-30382. However, the court can discern no potential claim based on retaliation in any of the plaintiff's three inmate complaints. That is, the plaintiff did not identify a retaliatory action or assert a constitutionally-protected

activity that spurred the retaliation *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Thus, the plaintiff failed to exhaust Claim 3.

> **d.   Claim 4 - Religious Name**

The defendants assert that the plaintiff failed to exhaust Claim 4, in which he asserts that his rights under the free exercise clause and RLUIPA were violated. In Inmate Complaint 3, the plaintiff explicitly complained that he was not allowed to use his religious name. Based on this, the court finds that the defendants were clearly put on notice of the plaintiff's religious name claim. *See Porter*, 534 U.S. at 524-25. Thus, the plaintiff exhausted Claim 4.

> **e.   Claim 5 - SOTP Exercises**

The defendants aver that the plaintiff failed to exhaust Claim 5, in which he avers that he was forced to engage in exercises that violated his rights under the free exercise clause and RLUIPA. Review of the plaintiff's administrative grievances reveals that he never filed a complaint raising this claim. Thus, the plaintiff failed to exhaust Claim 5.

Finally, the defendants contend that the plaintiff failed to exhaust his claims against defendant Nagle because she is not mentioned in any inmate complaint. The majority of the federal courts of appeals, including the Seventh Circuit Court of Appeals, have not endorsed a requirement that a defendant to a civil suit first be named in an inmate's prison grievance to constitute exhaustion under 42 U.S.C. § 1997e(a). *See Strong*, 297 F.3d at 649 (noting that the Court of Appeals for the Sixth Circuit requires inmate to name defendant in grievance, but opting for notice

pleading where prison rules are silent); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) (no need to identify involved official if notice from grievance was sufficient); *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004) (remanding for determination whether failure to name defendant until disciplinary appeal sufficed for notice of grievance against official); *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (not requiring inmates to name defendant in grievance if information not available); *but see Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) (requiring that defendant be named in grievance for exhaustion). Thus, simply because defendant Nagle was not named in an offender complaint does not necessarily mean that the plaintiff failed to exhaust administrative remedies. Rather, the standard is whether the offender complaint would put an official on notice of the plaintiff's claim. Thus, the court cannot conclude that offender complaints were not exhausted simply because defendant Nagle was not named in those complaints.

In sum, the plaintiff exhausted his administrative remedies as to Claims 2 and 4. However, Claims 1, 3 and 5 will be dismissed as unexhausted. The court will now address the merits of Claims 2 and 4.

## B.    Claim 2 - Ex Post Facto Violation

The plaintiff alleges that the retroactive application of the SOTP program runs afoul of the constitutional prohibition against ex post facto laws. In response, the defendants contend that SOTP is not a law for ex post facto purposes. The ex post facto clause forbids a legislature from passing laws retroactively altering the elements of or increasing the punishment for a crime. *Westefer v. Snyder*, 422 F.3d

570, 576 (7th Cir. 2005) (citing *California Dep't of Corrs. v. Morales*, 514 U.S. 499, 504 (1995)).  For ex post facto purposes, a court must determine whether:  (1) the action complained of constitutes a "law"; and (2) whether the sanction can be considered a "punishment."  *Id.*  "Statutes and regulations governing parole are 'laws' for purposes of the ex post facto clause, and states may not change their laws in ways that increase the punishment for earlier crimes."  *Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2005).  However, interpretations of law made by administrative agencies are generally not considered law.  *Prater v. U.S. Parole Comm'n*, 802 F.2d 948 (7th Cir. 1986).

In the present case, it is undisputed that the plaintiff is incarcerated as a result of a violent homicide involving sexual assault.  During his incarceration, DOC clinical services determined that the plaintiff should be enrolled in SOTP.  On or about December 15, 1997, the plaintiff entered SOTP. For reasons that are in dispute, the plaintiff was terminated from SOTP in 1999.

The procedures for releasing offenders on parole are set forth in Wisconsin Statutes Chapter 304 and Chapter PAC 1 of the Wisconsin Administrative Code. One criteria considered by the Wisconsin Parole Commission (WPC) is whether the inmate served sufficient time so that release would not depreciate the seriousness of the offense.  During defendant Wells' tenure as chair of the WPC, the WPC did not have the authority to order specific programming needs related to sex offender treatment. However, once an inmate was referred for specific programming, it was

the responsibility of the WPC to determine whether the inmate had demonstrated satisfactory program participation at the institution.

The plaintiff argues that requiring him to participate in SOTP violates the ex post facto clause because it has prevented him from being granted parole and, therefore, increased the length of his incarceration. However, the plaintiff has failed to demonstrate that any law mandated his participation in SOTP. *See Westefer*, 422 F.3d at 576. Instead, it is undisputed that DOC clinical services determined that SOTP was the appropriate program to meet his treatment needs. Moreover, for reasons that will be discussed below, the arguments that the plaintiff advances in support of his proposition that he was required by law to participate in SOTP are not compelling.

First, the plaintiff alleges that specific program needs (such as SOTP) will not be provided at the institution until they have been recommended by the WPC. The court notes that this statement is of questionable veracity because the plaintiff admits that he was previously admitted to SOTP on the recommendation of DOC clinical services. However, even if the plaintiff's assertion were true, he has provided no evidence that any *recommendation* made by the WPC qualifies as a law for ex post facto purposes. *See Prater*, 802 F.3d at 954.

Next, the plaintiff argues that the WPC has taken efforts to increase the length of an inmate's incarceration beyond his or her mandatory release date. (*See* Pl.'s Resp. at 29). However, it is undisputed that the WPC does not have the authority to order specific programming needs related to sex offender treatment. Moreover,

the plaintiff is serving a life sentence and is not entitled to mandatory release under Wisconsin law. *See* Wis. Stat. § 302.11(1m).

Finally, the plaintiff contends that Governor Thompson entered into a contractual agreement with the federal government under 42 U.S.C. § 13703 to increase the period of incarceration for prisoners convicted of violent crimes. In support of his proposition, the plaintiff has submitted copies of several letters indicating that the DOC would receive an award for "developing additional prison and jail capacity for violent offenders." (Pl.'s Ex. 17 at 1). To this end, the State of Wisconsin agreed that it would implement "correctional policies and programs, including Truth-In-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed[.]" *Id.* at 2. The plaintiff has submitted no proof as to what, if any, laws were enacted pursuant to this agreement. And, these documents do not, on their face, apply to the SOTP program..

In sum, the plaintiff's ex post facto claim fails because he has produced no evidence that Wisconsin or the WPC ever adopted a law like the one he describes. There is neither evidence that the full Senate and House ever approved the bill, nor evidence that the WPC undertook a similar initiative that it still follows today. The plaintiff is serving a life sentence and the possibility that he might be paroled has always been discretionary. *See* Wis. Stat. § 304.06(1)(b). The court cannot say that the exercise of this discretion is a law for ex post facto purposes. See *Grennier*, 453 F.3d 442 at 445 (neither the ex post facto clause nor the due process clause has anything to say about how discretion will be exercised under an open-ended

system).  Requiring the plaintiff to participate in SOTP was at most a change in administrative policy, not a new law or exercise of delegated legislative authority. *See United States v. Seacott*, 15 F.3d 1380, 1385 (7th Cir. 1994); *Prater*, 802 F.3d at 954.  Thus, the defendants' motion will be granted as to this claim.

## C.    Claim 5 - **Religious Name**

The plaintiff alleges that he was denied use of his religious name in violation of the First Amendment and RLUIPA.  RLUIPA prohibits governmental imposition of a "substantial burden on the religious exercise" of an inmate, unless the defendant can show that the burden is: (1) in furtherance of a compelling governmental interest; and (2) is the lest restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000cc-1(a). By contrast, a prison regulation challenged on First Amendment grounds will be upheld if it is reasonably related to a legitimate penological interest.  *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004). Because the defendants have a heavier burden under RLUIPA, the court will first consider the plaintiff's statutory claim. If the defendants meet their burden under RLUIPA, they will meet the less stringent burden of showing that their conduct was reasonably related to a legitimate penological interest under the First Amendment.

Before addressing the merits of the plaintiff's statutory claim, the protections afforded by the Religious Land Use and Institutionalized Persons Act apply where:

> (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or
>
> (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc-1(b). Because the DOC receives and uses federal grant money for state prison facilities, the requirements of the RLUIPA apply to it. *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citing *Charles v. Verhagen*, 348 F.3d 601, 606 (7th Cir. 2003)).

To show that his rights under RLUIPA were violated, the plaintiff must first establish that the defendants' actions create a substantial burden on the exercise of his religious beliefs. 42 U.S.C. § 2000cc-2(b); *Hernandez v. Commissioner*, 490 U.S. 680 (1989). The plaintiff's religious beliefs must be sincerely held in order to establish a protected right under RLUIPA. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion...the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity."). If a plaintiff makes a showing that his sincerely held religious beliefs have been substantially burdened, the defendant must come forward with evidence demonstrating that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." *Id.* at 715-16.

The burden of proving the existence of a substantial interference with the right of free exercise rests upon the religious adherent. *Werner v. McCooter,* 49 F.3d 1476, 1480 n. 2 (10th Cir. 1995). While RLUIPA does not define the term "substantial burden," the Court of Appeals for the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." *Civil*

*Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Under the statute, a "religious exercise" is "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-

5(7)(A).

    In the present case, the parties do not dispute that the plaintiff's religious

beliefs are sincerely held. *See Cutter,* 544 U.S. at 725. Therefore, the relevant

inquiry is whether these beliefs were substantially burdened as a result of the

defendants' refusal to allow the plaintiff to use his religious name. *See Crosley-El

v. Berge*, 896 F. Supp. 885, 887 (E.D. Wis. 1995) (if there is no substantial burden,

RLUIPA does not apply).

    The plaintiff contends that it is customary for "Christian adherents to take on

a new (outward) name/identity to reflect their (inward) belief that they have had a

genuine Spiritual Awakening and been Born-Again as a new person/creature by

accepting Jesus Christ as their personal Lord and Savior." (Pl.'s Br. in Supp. of Mot.

for Partial Summ. Judge. at 2). As discussed in this court's order dated May 7,

2007, it is doubtful whether the plaintiff's use of his name is indeed a religious

exercise because evidence suggests that he asked prison officials to permit him to

use the name "Mr. Terrance J. Shaw, D.B.S., Ph.D., D.D." to reflect the "diplomas

and degrees" that are in his prison education file. (*See* Compl. Ex. 13).

    Assuming, however, that the plaintiff's use of this name is a religious exercise

for purposes of 42 U.S.C. § 2000cc-5(7)(A), it is unclear how being denied use of

such title renders his religious exercise "effectively impracticable." *See Civil*

*Liberties for Urban Believer*, 342 F.3d at 761. Notably, the plaintiff has submitted an affidavit attesting that inability to use his religious name "would place a substantial burden on the practice of his religion." (Shaw Aff. ¶ 5). However, this statement does not set out a fact "that would be admissible in evidence." Fed.R.Civ.P. 56(e)(1). Instead, the plaintiff's averment is conclusory and does not demonstrate that he will be impacted in his ability to practice his religion, including being preventing from participating in religious ceremonies, limiting his access to a religious practice, or otherwise hampering his ability to adhere to the tenets of his faith. *See Ashanti v. Ca. Dep't of Corrs.*, 2007 WL 520958, * 16 (E.D. Cal. Feb. 15, 2007) (granting defendants' summary judgment motion where plaintiff failed to show that denial of religious name posed a substantial burden on his practice of religion).

The plaintiff argues that the defendants are not entitled to judgment as to his RLUIPA claim simply because this court previously denied his motion for summary judgment on the same. The plaintiff is correct on this point: the defendants must show that there is "no genuine issue as to any material fact" and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, it is well established that where a moving party seeks summary judgment on the ground that there is a lack of evidence to support the nonmoving party's case, the moving party may satisfy its burden simply by pointing out the absence of evidence. *Celotex Corp.*, 477 U.S. at 325; *see also Koszola v. Bd. of Ed.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (at summary judgment, a party must submit what evidence it has).

In the present case, the defendants have demonstrated that the evidence on file does not support a finding that refusing to allow the plaintiff use of his religious name substantially burdens his practice of religion. Therefore, the plaintiff cannot succeed on either his RLUIPA or First Amendment claim. Thus, the defendants' motion for summary judgment will be granted.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for reconsideration (Docket #112) is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion to stay the proceedings pending resolution of his motion to appoint counsel (Docket #112) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #73) is **GRANTED.**

The Clerk of this Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge